Downey, Judge,
delivered the opinion of the court.
The original action, which was the predecessor of this one and involved the same cause of action, was first commenced *5 in this court on the 6th day of July, 1898, by J. E. Simpson and others, a partnership, doing business under the firm name of J. E. Simpson & Co., and was for the recovery of $197,316.35, alleged to be the cost of extra labor and material in connection with the construction of a timber dry dock at the Brooklyn Navy Yard, under a contract with the Bureau of Yards and Docks of the Navy Department, of date October 13, 1887, the alleged extra expenditures having been entailed by the encountering of unforeseen difficulties by way of quicksands during the progress of the construction of said dock. This original case was decided by the Court of Claims adversely to claimants on the 3d day of March, 1896, 31 C. Cls., 217, and was thereafter appealed to the Supreme Court of the United States, which court on the 3d day of January, 1899, 172 U. S., 372, affirmed the decision of this court. Something more than six years after the decision of the Supreme Court, namely, on the 24th day of February, 1905, 33 Stat., 743, Congress passed a special jurisdictional act as follows:
“That jurisdiction is hereby conferred on the Court of Claims to readjudicate the case of J. E. Simpson & Co. against the United States, being numbered eighteen thousand and twenty-eight on the docket of the said court, upon the evidence therein and such further competent evidence as may be adduced by either party within such reasonable time as the court may fix and determine, and if the said court shall find upon readjudication that the said firm sustained loss in the construction of a timber dry dock for the United States at the New York Navy Yard, during the years eighteen hundred and eighty-seven to eighteen hundred and ninety, by reason of the fact that the soils underlying the site selected and provided for the said dry dock by the United States were unstable and were not as described by a profile and report, furnished to the said firm by agents of the United States, prior to the execution of the contract for the said dry dock between the said firm and the United States, the said court is hereby authorized and empowered to enter judgment in favor of the said firm for the amount of its loss, so found, not exceeding the sum of fifty thousand dollars.”
*6 Under this special jurisdictional act the case was again tried in this court, Henry W. Goodrich, receiver, having been substituted for the original plaintiffs, and on the 12th day of February, 1912, on the facts then found, the claimant was awarded a judgment for $50,000. Thereafter, upon motion of the defendant, the court, on January 6, 1913, awarded a new trial for the purpose of permitting the introduction of additional testimony in the nature of newly discovered evidence, and upon the testimony originally in the case and the additional testimony submitted since the granting of a new trial, the case is again submitted for consideration and determination.
In connection with the efforts made to procure special legislation at the hands of Congress authorizing another trial of this case, with a part of the law necessarily applicable thereto eliminated, it appears from the record that the bill pending in Congress, which ultimately became the legislation quoted, recited in its original form, by way of inducement, that the case was dismissed in this court “ by reason of certain strict, technical, legal defenses, leaving the equities undetermined,” apparently omitting to call the attention of of Congress to the fact that the case had received very careful attention at the hands of the Supreme Court of the United States and the relief sought by claimants again, by that high court, denied. In view of the fact that the case upon its merits had been decided adversely by the court of last resort, the question is raised as to the constitutionality of the special jurisdictional act which upon its face requires this court to again decide the case without regard to the contract or the well-established legal principles which the Supreme Court has said prevent a recovery. But we pass this question without further consideration and go to the merits of the case as presented under the special jurisdictional act.
It will be noted that the findings of fact as now made by the court are the same as the findings made when the case was previously decided on the 12th day of February, 1912, except as to Finding VII. The findings as then made were necessarily predicated upon the testimony which was then before the court. Since the granting of the new trial addi *7 tional and very material testimony has been submitted and the present findings are of course predicated upon all the testimony. The change in Finding VTT, which is the material finding so far as the ultimate conclusion is concerned, is induced largely by the additional testimony, which, to the court, seems to be very weighty and amply sufficient to justify the changed conclusions, upon all the testimony touching the questions involved.
Under the jurisdictional act, the questions for the court’s consideration and determination, aside from the question of the amount of any loss sustained, are limited to the two questions as to whether the soils underlying the site selected for the dock, quoting the act, “ were unstable and were not as described by a profile and report furnished to the said firm by agents of the United States prior to the execution of the contract for the said dry dock.”
Upon the first question the court has found that the contractor did encounter unstable soils, and from no possible standpoint can there seem to be any reason for any discussion of that feature of the case. But the encountering of unstable soils does not in itself furnish any right of recovery, for the phraseology of the special act is such that to justify the rendition of a judgment for the claimant it must appear not only that the soils were unstable but that they were not as described in the profile and report. We take this to mean not that the question is as to whether the soils were so technically the same or otherwise as might be determined by an accurate chemical analysis or other detailed laboratory test, but whether they were substantially the same, and particularly in the respects which would produce the conditions encountered during the progress of this work.
It is recited in Finding YII that while the profile and-report did not describe any of the materials found at any of the bore holes as quicksand, they did represent such soils and water conditions as would lead an experienced engineer or contractor to expect that they would be converted into quicksand when the superimposed material was removed by excavation and water admitted.
If there was any error in the findings of the court upon the preceding trial in this case, it is to be found in the pos *8 sibility that the court, under the testimony then before it, was inclined to the view that the profile and report was erroneous, or at least materially misleading, in that they did not at any of the borings in specific terms show quicksand. Whatever may have been the correct view upon that point, and of the testimony then before the court, it seems plainly apparent now, as we gather from all the testimony, that in the description of the materials found at the different borings there would have been, in engineering parlance, no propriety in describing any of those materials on the profile as quicksand.
The court will not undertake to discuss quicksand from a technical standpoint, since it would fear to tread upon territory as to which skilled engineers find room for such variance of opinion. But it does not hesitate to conclude from the testimony that materials confined by superimposed earth, through which water has no opportunity to flow, are not then properly to be described as quicksands, even though they are such materials as that when the superimposed earth is removed and water admitted they become active quicksands of a very treacherous character; and we may know also in this connection that such materials as under conditions stated may be expected to become active quicksands are to be found very hard and compact when compressed and not saturated with water.
The findings of the court upon the former trial indicated the conclusion that, while the contractor should have expected from the profile and report that he would encounter some quicksand, there was nothing which should have lead him to expect it to the extent actually encountered. A careful examination of all the testimony now before us, and particularly of the weight of the testimony induced by that submitted since the former trial, indicates quite clearly, we think, that to the extent that one is required to judge of the conditions to be found in an area by .a limited number of test borings, the contractor in this case should have known from the conditions found at the various borings made in this case, as shown upon the profile supplemented by the report accompanying the same, that he would likely encounter in *9 excavating for this dock exactly the conditions which the testimony in the case shows that he did encounter.
Finding YII is in such form, and goes so conclusively to the merits of the question submitted for our determination under the special jurisdiction act, that there seems to be no occasion for extending the discussion.
It must be concluded that the claimant is not entitled to a judgment and that his action ought to be dismissed, and it is so ordered.
All judges concur.